STATES DISTRICT COURT WESTERN
DISTRICT OF NEW YORK
_____

STEPHANIE D.,

                                 **DECISION AND ORDER**

                Plaintiff,

v.                                     1:22-cv-00788 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance ("DIB") or supplemental security income ("SSI") benefits. Before the court are the parties' cross-motions for judgment on the pleadings [8, 9].[1] The parties have consented to my jurisdiction [12]. Having reviewed the parties' submissions [8, 9, 10], the plaintiff's motion is granted in part, and the Commissioner's motion is denied.

## BACKGROUND

        The parties' familiarity with the 1,865-page administrative record [4, 5, 6] is presumed. The plaintiff filed an application for DIB and SSI on April 7, 2020. Id. at 15. She alleged a disability beginning on September 1, 2018. Id. Plaintiff's claim was initially denied. Id. Administrative Law Judge ("ALJ") Sharda Singh conducted a telephonic hearing on July 9, 2021. Id.; see also id. at 31-59 (transcript of hearing). Plaintiff and her attorney appeared. Id. at

---

[1] Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

31. ALJ Singh heard testimony from the plaintiff and vocational expert Steven Sachs. Id. at 37-58.

A.     **The ALJ's Notice of Decision**

ALJ Singh concluded that plaintiff was not disabled from September 1, 2018 through August 23, 2021, the date of her decision. Id. at 25-26. She determined that plaintiff's severe impairments were "degenerative disc disease (DDD), dysfunction of major joints – right knee, and obesity". Id. at 17.

ALJ Singh determined that plaintiff retained the residual functional capacity ("RFC") to perform light work with additional limitations:

> "[T]he claimant has the [RFC] to perform light work . . . except she can never climb ladders, ropes and scaffold; occasionally climb ramps, stairs, balance, stoop, kneel, crouch and crawl; is limited frequently to fine and gross hand manipulations bilaterally and is limited frequently to operation of foot controls with the right lower extremity with avoidance of hazards, such as moving machinery."

Id. at 20. She found that plaintiff is capable of performing jobs such as charge account clerk, final assembler, and ticket counter. Id. at 25.

B.     **Plaintiff's Testimony**

Because plaintiff's arguments focus on her carpal tunnel syndrome and cardiac condition, I will focus on plaintiff's testimony concerning those impairments. Plaintiff testified that she had carpal tunnel surgery on her right hand and that her "right hand is fine now". Id. at 43. She still does not have her full strength back in her thumb and some of her fingers. Id. She attributed that to her hand not being "completely healed" after surgery. Id. There are some activites that involve grasping that she cannot do, such as shovel or rake. Id. at 44. She can,

however grasp smaller items, like pens and pencils.  Id.  She has trouble grasping a knife and cutting, but she can load the dishwasher.  Id. at 44-45.

Plaintiff does not carry heavy objects like laundry or the vacuum cleaner up the stairs due to her back and her knee.  Id.

She had a heart attack in May 2021.  Id. at 46.  She was admitted to the hospital from May 13 through May 17 and the doctors placed three stents to resolve a blockage.  Id.  She was then admitted again May 19 through May 24 after having some additional chest pain and hurting her finger, resulting in painful cellulitis.  Id. at 47.  She testified that the second hospitalization was "mainly because of [her] finger".  Id.

She testified that she continues to get chest pain.  Id.  It does not happen a lot and is "not really intense".  Id.  It is not related to activity.  Id. at 47-48.  She also "sometimes" experiences shortness of breath and hot flashes.  Id. at 48.  Plaintiff testified that she "still gets tired" (id. at 47) but then testified that she doesn't sleep well because her sleep is often interrupted because her back, or neck, or knee is uncomfortable.  Id. at 48.  She takes a nap during the day for two to three hours a day.  Id.

C.      Functional Assessments in the Record

Richard Hoy, M.D., plaintiff's hand surgeon, completed a Medical Statement on May 10, 2021.  On the form, he indicated that plaintiff had carpal tunnel release surgery on April 15, 2021.  He opined that plaintiff could perform fine or manipulation activities "rarely" (defined as 1% to 5% of an 8-hour work day) with her right hand and "occasionally" (defined as 6% to 33% of an 8-hour work day) with her left.  Id. at 738.  He indicated that plaintiff was unable to perform fine and gross movements, such sorting and handling papers or files and placing files in

a file cabinet.  Id. at 739.  He also stated that she was 100% disabled from her work for 4-6 weeks following her surgery and had "moderate" pain.

Plaintiff was examined by consultative examiner Harbinder Toor, M.D. on June 24, 2000.  Among his examination findings, he found plaintiff's "[h]and and finger dexterity intact" and her "[g]rip strength 5/5 bilaterally".  Id. at 403.  Relying on the medical records in the file, including Dr. Toor's opinion, state agency physicians Dr. Miller, D.O. and Dr. Krist, D.O.[2] found, among other things, that plaintiff had no manipulative limitations.  Id. at 73, 83.

**D.     ALJ Singh's RFC Analysis**

To arrive at his conclusions of plaintiff's RFC, ALJ Singh analyzed the evidence in the record, including plaintiff's testimony, her treatment records, and the medical opinion evidence.  Id. at 20-24.  After summarizing plaintiff's testimony, he found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  Id. at 21.

He then outlined medical evidence in the file concerning plaintiff's knee, back, carpal tunnel, cardiac and obesity conditions, and considered the functional assessments in the record.  ALJ Singh's analysis of Dr. Hoy's opinion is pithy:

> "On May 10, 2021, Dr. Hoy, M.D., opined that she could rarely perform fin and gross manipulation with the right hand and occasionally with the left hand.  She had moderate pain from her [carpal tunnel release].  He further opined that she was 100% disabled from her position (four (4) to six (6) weeks post surgery).
> . . .

---

[2]     Dr. Miller's and Dr. Krist's first names do not appear in the record.

>I find his opinion somewhat persuasive because it was given
>shortly after surgery and during her recovery period. These
>limitations were included in the RFC but are not as limiting."

Id. at 23-24. ALJ Singh also considered opinions from social security medical consultants Dr. Miller and Dr. Krist, and consultative examiner Harbinder Toor, M.D. ALJ Singh concluded

>"Based on the foregoing, I find the claimant has the above residual
>functional capacity assessment, which is supported by the
>objective medical record. She does have a history of surgery on
>her knee. She did well afterwards; however, has continued to
>complain of pain with some tenderness has been noted. AS for her
>back, she complains of pain. However, imaging has not shown
>significant issues. Moreover, she does not require an assistive
>device. However, a light RFC is warranted due to her pain."

Id. at 24.

### E.   The Parties' Arguments

Plaintiff argues that the RFC is unsupported by substantial evidence because the ALJ failed to discuss the supportability and consistency of Dr. Hoy's opinion, and erred when he failed to include plaintiff's heart attack as a severe impairment or to account for related impairments at subsequent steps of the analysis. Plaintiff's Memorandum of Law at 10-18.

Defendant counters that the RFC is supported by substantial evidence and that the ALJ properly considered both Dr. Hoy's opinion and the evidence of limitations connected to plaintiff's cardiac condition. Commissioner's Memorandum [9-1] at 8-19.

For the following reasons, I agree with plaintiff that remand is required.

## ANALYSIS

### A.   Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the

decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). "[U]nder the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record". Cheatham v. Commissioner, 2018 WL 5809937, *9 (W.D.N.Y. 2018); *see also* Brault v. Commissioner, 683 F.3d 442, 448 (2d Cir. 2012) ("the substantial evidence standard means once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*"(emphasis in original)).

An adjudicator determining a claim for Social Security benefits employs a five-step sequential process. *See* Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

**B.      Step 2 Evaluation of Post-Heart Attack Cardiac Condition**

At step two, the ALJ must determine whether the claimant has an impairment, or combination of impairments, that is "severe". 20 C.F.R. §416.924(a). A severe impairment is one that causes "more than minimal functional limitations". §416.924(c); *see* Jennifer F. o/b/o M.C.W. v. Commissioner of Social Security, 2022 WL 600841, *1 (W.D.N.Y. 2022). The severity standard "is *de minimis* and is intended only to screen out the very weakest cases". McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). "However, despite this lenient standard, the 'mere presence of a disease or impairment, or establishing that a person has been diagnosed

- 6 -

or treated for a disease or impairment' is not, by itself, sufficient to render a condition 'severe'". Ciara B. v. Commissioner of Social Security, 610 F. Supp. 3d 515, 520 (W.D.N.Y. 2022) (citations omitted).

    At the hearing, plaintiff's attorney notified the ALJ of plaintiff's "recent myocardial infarction with a stent placement that occurred on May 15 of that year. Administrative Record at 37. Plaintiff's records for her May 13 hospitalization were in the record at the time of the hearing. Id. 854-1524. Plaintiff testified about her hospitalization for chest pain. Id. at 46-47. She testified that she had a 90 percent blockage and placement of three stents. Id. at 46. She testified about having some ongoing symptoms, including chest pains, shortness of breath, and hot flashes. Id. at 47-48. While none of these circumstances, by themselves or together, necessitate a finding that her heart condition was a severe impairment, it does call into question why ALJ Singh declined to even discuss the condition at step two, particularly where he discussed the other conditions he considered and determined to be nonsevere. Id. at 17 (discussing anxiety). Indeed, as the ALJ is required to consider all impairments about which he "receive[s] evidence" (20 C.F.R. §404.1512(a)(1)), his failure to assess a diagnosed impairment at step two is legal error. See Bradley o/b/o C.B. v. Berryhill, 2017 WL 8287642, *2 (W.D.N.Y. 2017).

    Nonetheless, such error is harmless if the ALJ's analysis at subsequent steps reveals that he sufficiently considered the omitted condition. See Reices-Colon v. Astrue, 523 F. App'x 796, 798 (2d Cir. 2013) (Summary Order) ("in those subsequent steps, the ALJ specifically considered [claimant's] anxiety and panic attacks. Because these conditions were considered during the subsequent steps, any error was harmless"). More generally, "[a]n ALJ does not have to state on the record every reason justifying a decision." Brault v. Social Security

Administration Commissioner, 683 F.3d 443, 448 (2d Cir. 2012). Rather, the courts "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied". McIntyre v. Colvin, 758 F.3d 146, 149 (2d Cir. 2014).

ALJ Singh discussed the plaintiff's heart condition and hospitalization in his decision.  He summarized her testimony concerning her hospitalization, diagnosis, ongoing symptoms, and medications related to her heart attack.  Id. at 21.  He summarized her testimony concerning her second May 2021 hospitalization.  Plaintiff testified she went to the emergency room because she was having some chest pain and pain in an injured finger.  Id. at 21; *see also* id. at 47.  He acknowledged her testimony that she was on medication and continued to have symptoms:

> "[S]he has been on blood thinners since her heart [attack]. She stated that she gets tired, gets chest pain, which are not as bad as before.  She stated that the chest pain is not "intense intense."  She stated that she experienced shortness of breath and hot flashes.  She stated that she has to take a nap for two (2) to three (3) hours."

Id. at 21.

ALJ Singh also discussed the treatment records from her hospitalizations and cited from her May 17, 2021 discharge summary:  "Her post cath course was complicated by recurrent intermittent pain that resolved with up titration of her medication regimen.  She remained pain free and was stable for discharge".  Id. at 23, citing id. at 1248.  The discharge summary did not incorporate any limitations on plaintiff's acitivites.  Id. at 1248.

ALJ Singh also considered and discussed the records of plaintiff's hospitalization from May 19 through May 24, 2021.  Plaintiff was diagnosed with cellulitis in her finger and

"denied any current chest pain, dizziness/lightheadedness, shortness of breath, palpitations or fever". Id. at 23, *citing* id. at 1687.

Plaintiff did not testify concerning any additional treatment related to her heart condition and there are no further records in the file concerning cardiac treatment or care. She did not testify as to any functional limitations placed on her activities by her cardiologist. Plaintiff does not identify any such records or testimony in her motion papers. *See* Plaintiff's Memorandum of Law [8-1] at 17. Nor does plaintiff suggest any functional limitations that should have been included in the RFC, but were not. Id. at 17-18. Plaintiff does not identify any medical evidence of any functional limitation that the ALJ failed to include in his analysis aside from the plaintiff's testimony about needing a nap during the day:

> "According to the vocational expert, an individual off task 15 percent of the workday would be unemployable. . . . Plaintiff's naps would place her over that amount, and therefore, if limitations from her heart attack were included in the RFC, then a finding of disabled would be warranted."

Id. at 18. There is no medical evidence that plaintiff needs to take naps during the day related to her cardiac – or any other – condition.

The ALJ did, however, conclude that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision". Administrative Record at 21.

Because I find that ALJ Singh considered impairments related to plaintiff's heart attack and hospitalization at step 4 of his analysis, remand is not required for his error at step 2.

C.       **Analysis of Medical Opinion Evidence and Residual Functional Capacity**

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision" and an ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole". Matta v. Astrue, 508 Fed. Appx. 53, 56 (2d Cir. 2013) (Summary Order). *See also* Young v. Berryhill, 2018 WL 2752443, *2 (W.D.N.Y. 2018) ("[i]t is well settled that an ALJ need not adopt one or more medical opinions verbatim in order to render a sufficiently-supported RFC determination").

It is "well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. . . . The opinion of a non-examining source may override that of an examining source, even a treating source, provided the opinion is supported by evidence in the record." Maleski v. Commissioner, 2020 WL 210064, *4 (W.D.N.Y. 2020); *see also* Camille v. Colvin, 652 F. App'x 25, 28 (2d Cir. 2016) ("[t]he ALJ was permitted to consider [treating] Dr. Dawood's treatment notes in weighing the opinions of Dr. Dawood and [consulting psychologist] Dr. Kamin; and she was permitted to conclude that Dr. Kamin's opinion was more reliable"). "Ultimately it is [p]laintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ". Beaman v. Commissioner, 2020 WL 473618, *6 (W.D.N.Y. 2020).

Plaintiff argues that ALJ Singh erred in his analysis of Dr. Hoy's opinion because he "failed to articulate the supportability and consistency of evidence, and this error left the RFC not supported by substantial evidence". Plaintiff's Memorandum of Law [8-1] at 10,

In response, the Commissioner argues that ALJ Singh's analysis of Dr. Hoy's opinion was appropriate. Commissioner's Memorandum [9-1] at 11. Further, even if the ALJ

erred in not explicitly assessing the consistency and supportability factors in evaluating the persuasiveness of Dr. Hoy's opinion, such error was harmless because a "searching review of the record" demonstrates that "the substance of the regulations was not traversed". Id. at 12.

The requirements for an ALJ's analysis of medical opinion evidence is outlined in 20 C.F.R. §404.1520c. An ALJ considers several factors when evaluating medical opinions, including supportability, consistency, the provider's relationship with the claimant, and the provider's specialty. 20 C.F.R. §404.1520c(c). However, "[t]he factors of supportability . . . and consistency . . . are the most important factors . . . Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination decision." 20 C.F.R. §404.1520c(b)(2).

I find that remand is required here because ALJ Singh satisfied that obligation with respect to his RFC regarding plaintiff's right hand, but not her left. It is the ALJ's responsibility to "weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". Matta, supra. In doing so, an ALJ may not "arbitrarily substitute [his or her] own judgment for competent medical opinion." Riccobono v. Saul, 796 F. App'x 49, 50 (2d Cir. 2020) (Summary Order). However, "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as [the conclusion] is supported by substantial evidence." Schillo v. Kijakazi, 31 F.4th 64, 78 (2d Cir. 2022).

ALJ Singh found Dr. Hoy's opinion "somewhat persuasive because it was given shortly after surgery and during [plaintiff's] recovery period". Administrative Record at 738. Although the plaintiff is correct that ALJ Singh does not, in that paragraph, explicitly consider the supportability and consistency of Dr. Hoy's opinion with other evidence in the record, ALJ Singh's analysis, taken as a whole, demonstrates that he considered both factors to make

- 11 -

conclusions about the persuasiveness of Dr. Hoy's opinion – at least with respect to plaintiff's right hand.

First, ALJ Singh correctly ascertained that his opinion was delivered "shortly after" plaintiff's carpal tunnel surgery. He cited and summarized her medical records concerning her carpal tunnel syndrome and surgery earlier in his opinion:

> "The claimant recently was diagnosed with bilateral carpal tunnel syndrome (CTS). On February 1, 2021, she complained of pain and numbness in her hands. An electromyography/nerve conduction study (EMG/NCS) revealed bilateral CTS . . . On April 15, 2021, she had right carpal tunnel release (RCTR) . . . On April 30, 2021, she denied any pain".

Id. at 23. When asked about her carpal tunnel surgery, claimant stated that "[m]y right hand is done and my right hand is fine now". Id. at 43. ALJ Singh summarized plaintiff's testimony in his analysis:

> "As for her carpal tunnel, she testified that she was doing well with her right hand and the left hand would be done. She is right-hand dominant. She stated that she does not have full strength in her right hand after surgery, and does not have the full grip. She stated that she could grip a pen and pencil; however gripping a knife to cut bothered her. She stated that the heaviest [she] could pick up was maybe a bowl of water for her dog. She stated that she does not carry the laundry and vacuum up the stairs. She stated that she will load the washer and dryer, but her husband will carry it."

Id. at 21.

Given plaintiff's testimony concerning her ability to grip a pen and pencil, to load the dishwasher, and her representation that her right hand "is fine", it is obvious that Dr. Hoy's post-surgical opinion was no longer consistent with plaintiff's actual condition. In it, he circled information stating that plaintiff was not able to perform fine and gross movements effectively, such as the ability to "sort and handle papers or files" or to "place files in a file cabinet". Id. at 739. He found that plaintiff could only "rarely" perform fine and gross manipulation with her

right hand. Those significant limitations were not reflected in plaintiff's testimony about the progress of her right hand after surgery. Accordingly, ALJ Singh included Dr. Hoy's fine and gross manipulation limitations into the RFC, but to a degree that is "not as limiting". Id. at 24.

The ALJ's finding for plaintiff's right hand is supported by substantial evidence. It is supported by plaintiff's testimony and consistent with the lack of any medical evidence suggesting that plaintiff's right hand condition failed to improve following her surgery. The ALJ "is entitled to rely not only on what the record says, but also on what it does not say". Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995). Here, the record did not contain any evidence of functional limitations related to plaintiff's right hand condition post-surgery (or to her heart condition) that would restrict plaintiff from performing the sedentary jobs that the ALJ found plaintiff could perform with her RFC.

Plaintiff argues that the ticket counter job that ALJ Singh found plaintiff could perform requires "constant" handling and fingering, which is inconsistent with the RFC limitation to "frequent[ ] fine and gross hand manipulations bilaterally". Plaintiff's Memorandum of Law [8-1] at 14; *see also* Administrative Record at 20. Even if we remove from the analysis ticket counter job, the remaining jobs of charge account clerk, which requires frequent handling and occasional fingering (*see* [8-1] at 14), and final assembler, which the plaintiff did not contest, provides a sufficient number of jobs in the national economy - 12,000 and 4,000 respectively - to support ALJ Singh's determination. *See* Sanchez v. Berryhill, 336 F.Sup.3d 174, 177-78 (W.D.N.Y. 2018) (finding that the four jobs that the VE identified, totaling 9,046 jobs available nationally, is "significant"); *see also* Renee D. v. Commissioner, 2018 WL 4266044, *4-5 (N.D.N.Y. 2018) (three available jobs with a collective number of 5,688 jobs available nationally is not "significant"); Hamilton v. Commissioner, 105 F.Supp.3d 223, 231

(N.D.N.Y. 2015) (three available jobs with a collective number of 5,160 jobs available nationally is not "significant"). Any error concerning the application of the ticket counter job to the function of plaintiff's right hand is, therefore, harmless.

However, plaintiff had not had surgery on her left hand at the time Dr. Hoy authored his opinion. His opinion concerning plaintiff's ability to perform fine and gross manipulation with left hand, therefore, was not a post-surgical finding that could be expected to improve over time. Administrative Record at 738. Further, as ALJ Singh noted in his decision, an EMG study was performed that showed bilateral carpal tunnel syndrome after plaintiff complained about pain and numbness in both hands. There is no medical evidence that the plaintiff's symptoms as to her left hand had decreased, or that she had regained additional function in her left hand by the time ALJ Singh authored his opinion.

Given this evidence, ALJ Singh's finding that plaintiff could perform "frequent" fine and gross manipulation with the left hand requires additional explanation. Although, as pointed out by the Commissioner, Dr. Toor's June 24, 2020 consultative examination report included a finding that plaintiff's "[h]and and finger dexterity [are] intact. Grip strength 5/5 bilaterally". Id. at 403; see also Commissioner's Memorandum at 14. However, this finding is not mentioned by the ALJ in his decision, notwithstanding that he extensively discussed the findings in Dr. Toor's report. Administrative Record at 22. Although the opinions of social security examiners Drs. Miller and Krist both stated in their reports that plaintiff had no "manipulative limitations", they also did not cite Dr. Toor's finding in their reports. See Id. at 72-74, 83-84.

Accordingly I "cannot divine the bases for the ALJ's conclusions" concerning the plaintiff's left hand limitations. Canales v. Commissioner, 698 F.Supp.2d 335, 343 (E.D.N.Y.

2010).  ALJ Singh did not adequately explain his bilateral limitation for fine and gross hand manipulation, at least as it applies to plaintiff's left hand.  He did not adequately address, even implicitly, the "supportability" and "consistency" factors required by 20 C.F.R. §404.1520c as applied to plaintiff's left hand.

Therefore, I find that any error at step 2 of ALJ Singh's analysis was harmless, and that his determination with respect to plaintiff's right hand is supported by substantial evidence.  However, I find that he failed to support his conclusions concerning plaintiff's left hand with sufficient analysis to support his incorporation into the RFC of a limitation to "frequent" fine and gross hand manipulations.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [8] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and the Commissioner's motion for judgment on the pleadings [9] is denied.

**SO ORDERED**.

Dated: September 30, 2025

      /s/ Jeremiah J. McCarthy
      JEREMIAH J. MCCARTHY
      United States Magistrate Judge